ORIGINAL

JUDGE OETKE[R]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KENAN TARIVERDI,<br>   a/k/a "Kenan Tariverdiev,"<br>   a/k/a "Ken,"<br>NAZIM TARIVERDI,<br>   a/k/a a/k/a "Nazim Tariverdiev,"<br>DILSHOD ISLAMOV,<br>   a/k/a "Dylan,"<br>   a/k/a "Dilan," and<br>ALVARO GEOVANNI QUIJADA-LEMUS,<br>   a/k/a "Giovanni,"<br><br>                  Defendants. | **SEALED INDICTMENT**<br><br>24 Cr. _____<br><br><br>**24CRIM 599** |

**COUNT ONE**
(Conspiracy to Commit Healthcare Fraud)

The Grand Jury charges:

**Overview of the Scheme**

1.   From at least in or about 2019 through at least in or about 2023, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, and others known and unknown, operated a criminal scheme that defrauded insurance programs designed to protect motor vehicle accident victims (the "No-Fault Scheme"). KENAN TARIVERDI, NAZIM TARIVERDI, and ISLAMOV laundered the proceeds of the No-Fault Scheme through a series of shell companies and using the services of unlicensed check cashers, such as ALVARO GEOVANNI QUIJADA-LEMUS, a/k/a "Giovanni," the defendant, and others known and unknown.

*Overview of No-Fault Motor Vehicle Insurance*

2.        At all times relevant to this Indictment, New York State law required every vehicle registered in New York State to have no-fault automobile insurance, which enabled the driver and passengers of a vehicle registered and insured in New York State to obtain benefits of up to $50,000 per person for injuries sustained in an automobile accident, regardless of fault (the "No-Fault Law"). The No-Fault Law required payments for medical treatments to be made promptly, thereby obviating the need for vehicle occupants (the "Patients") to file personal injury lawsuits to be reimbursed for medical treatment. Under the No-Fault Law, the Patients could assign their right to reimbursement from an insurance company to others, including, but not limited to, medical corporations that provided medical services to treat their injuries. If such an assignment were made, the medical corporations, or their agents, would bill the insurance company directly for services rendered and would receive payments directly from the insurance company.

3.        At all times relevant to this Indictment, pursuant to New York State law, all medical corporations in New York State were required to be owned, operated, and controlled by a licensed medical practitioner to be eligible for reimbursement under the No-Fault Law. Insurance companies were permitted, pursuant to New York State Law, to deny all billings for medical treatments from a medical corporation that was not actually owned, operated, and controlled by a licensed medical practitioner.

*The No-Fault Scheme*

4.        KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, carried out the No-Fault Scheme in three principal ways: (i) submitting insurance claims from medical corporations that were purportedly owned by licensed medical

professionals but were in fact owned and controlled by KENAN TARIVERDI, NAZIM TARIVERDI, ISLAMOV, and their co-conspirators; (ii) submitting claims for services purportedly performed by medical providers that the medical providers did not in fact perform; and (iii) submitting claims for unnecessary and excessive medical treatments and testing.

5.   First, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, fraudulently owned, operated, and controlled multiple medical professional corporations despite the fact that they were not licensed medical practitioners. As part of the No-Fault Scheme orchestrated by KENAN TARIVERDI, NAZIM TARIVERDI, and ISLAMOV, the medical professional corporations used to bill insurance providers were nominally owned by licensed medical practitioners, but, in truth and in fact, KENAN TARIVERDI, NAZIM TARIVERDI, ISLAMOV, and their co-conspirators owned, operated, and controlled these corporations. Had the insurance companies known that the claims being submitted on behalf of the medical corporations were not owned, operated, and controlled by medical practitioners, the insurance companies would have denied payment for the insurance claims submitted by these corporations.

6.   Second, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, billed insurance companies in the names of psychologists, medical professionals, and various professional corporations under the nominal control of those psychologists and medical professionals (the "No-Fault Medical Providers") for services that the psychologists and medical professionals did not actually perform. Had the insurance companies known that the claims included medical services that were never actually rendered by the

psychologists and medical professionals, the insurance companies would have denied payment for these insurance claims.

7. Third, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, conspired to bill insurance companies for expensive procedures, including psychological testing and treatment, regardless of medical necessity. Such unnecessary medical procedures were carried out pursuant to billing protocols that the defendants and their co-conspirators designed and implemented at various clinics in and around New York City to maximize the dollar amounts on insurance claims, rather than to provide necessary medical and psychological treatment. Had the insurance companies known that the claims included medical testing and services that were not medically necessary, the insurance companies would have denied payment for these insurance claims.

8. To perpetrate the No-Fault Scheme and defraud the insurance companies, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, and their co-conspirators frequently used the license information and signatures of the No-Fault Medical Providers on the fraudulent billing records that they submitted to the insurance companies.

9. As a result of the No-Fault Scheme, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, caused insurance providers to be billed over approximately $10 million in fraudulent claims for psychological testing and services. KENAN TARIVERDI, NAZIM TARIVERDI, and ISLAMOV also caused insurance providers to be billed for fraudulent claims for other types of medical testing and treatment.

*The Money Laundering Scheme*

10.     KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, laundered the proceeds of the No-Fault Scheme to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the No-Fault Scheme. At times, either funding companies or law firms authorized to collect insurance payments on behalf of the No-Fault Medical Providers transferred the No-Fault Scheme proceeds—namely the payments from insurance companies for the fraudulent claims—to bank accounts held in the names of the No-Fault Medical Providers. KENAN TARIVERDI, NAZIM TARIVERDI, ISLAMOV, and their co-conspirators exercised control over certain bank accounts held in the names of the No-Fault Medical Providers by, among other things, directing the No-Fault Medical Providers to sign stacks of blank checks drawn on their accounts. KENAN TARIVERDI, NAZIM TARIVERDI, ISLAMOV, and their co-conspirators caused checks drawn on accounts held in the names of No-Fault Medical Providers to be deposited into a series of shell companies that they or their co-conspirators controlled either in their own names or in the names of nominee owners.

11.     KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, used a network of money launderers who cashed checks from the shell companies and thus further laundered their No-Fault Scheme proceeds. ALVARO GEOVANNI QUIJADA-LEMUS, a/k/a "Giovanni," the defendant, was one such unlicensed check casher who laundered money for the No-Fault Scheme. KENAN TARIVERDI and ISLAMOV caused LEMUS to be provided with checks from the shell companies, and in exchange, LEMUS provided cash, minus a fee for his check cashing services. To conceal the money laundering scheme,

LEMUS and KENAN TARIVERDI used coded language to discuss the check cashing, referring to checks and/or cash as "cars" in written phone messages and calls when coordinating the check cashing transactions.

12. ALVARO GEOVANNI QUIJADA-LEMUS, a/k/a "Giovanni," the defendant, laundered multiple checks from KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, through an individual who was cooperating with law enforcement ("CW-1"). Over the course of approximately eight transactions, LEMUS provided CW-1 with approximately 50 checks totaling over approximately $200,000 from the shell companies controlled by KENAN TARIVERDI, NAZIM TARIVERDI, ISLAMOV, and their co-conspirators. In exchange, and minus a fee, CW-1, at the direction of law enforcement, provided LEMUS with cash. LEMUS again used coded language to conceal the check cashing, referring to checks and/or cash as "cars."

13. During the course of one such check-cashing transaction, ALVARO GEOVANNI QUIJADA-LEMUS, a/k/a "Giovanni," the defendant, provided CW-1 with checks from shell companies controlled by KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants. In exchange for those checks, CW-1 provided cash to LEMUS and represented to LEMUS that the cash included proceeds from illegally smuggling people across the border from Mexico.

14. Among other things, the No-Fault Scheme recruited medical professionals, gathered blank checks, and operated out of medical clinics in the Southern District of New York.

**Statutory Allegations**

15. From at least in or about 2019 through at least in or about January 2023, in the Southern District of New York and elsewhere, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, and others known and unknown, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to commit healthcare fraud, in violation of Title 18, United States Code, Section 1347.

16. It was a part and an object of the conspiracy that KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, and others known and unknown, knowingly and willfully, would and did execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of a health care benefit program in connection with the delivery of an payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347, to wit, KENAN TARIVERDI, NAZIM TARIVERDI, and ISLAMOV conspired with each other and with others to defraud health care benefit programs and to obtain money and property owned by, and under the custody and control of, health care benefit programs by submitting fraudulent insurance claims.

(Title 18, United States Code, Section 1349.)

**COUNT TWO**
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury further charges:

17. The allegations set forth in paragraphs 1 through 14 of this Indictment are repeated

and alleged as if fully set forth herein.

18. From at least in or about 2019 through at least in or about January 2023, in the Southern District of New York and elsewhere, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

19. It was a part and an object of the conspiracy that KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit KENAN TARIVERDI, NAZIM TARIVERDI, and ISLAMOV conspired with each other and with others to defraud insurance companies by submitting fraudulent insurance claims in order to obtain payment from the insurance companies, and used interstate and foreign wires in furtherance of that conspiracy.

(Title 18, United States Code, Section 1349.)

### COUNT THREE
(Aggravated Identity Theft)

The Grand Jury further charges:

20. The allegations set forth in paragraphs 1 through 14 of this Indictment are repeated

and alleged as if fully set forth herein.

21. From at least in or about 2019 through at least in or about January 2023, in the Southern District of New York and elsewhere, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, KENAN TARIVERDI, NAZIM TARIVERDI, and ISLAMOV possessed, used, and transferred the personal identifying information, including signatures and license information, of medical professionals during and in relation to the health care fraud conspiracy charged in Count One of this Indictment and the wire fraud conspiracy charged in Count Two of this Indictment, and aided and abetted the same.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## COUNT FOUR
### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

22. The allegations set forth in paragraphs 1 through 14 of this Indictment are repeated and alleged as if fully set forth herein.

23. From at least in or about 2019 through at least in or about January 2023, in the Southern District of New York and elsewhere, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," and ALVARO GEOVANNI QUIJADA-LEMUS, a/k/a "Giovanni," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

24.    It was a part and an object of the conspiracy that KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," and ALVARO GEOVANNI QUIJADA-LEMUS, a/k/a "Giovanni," the defendants, and others known and unknown, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit health care fraud, in violation of Title 18, United States Code, Section 1347, and wire fraud, in violation of Title 18, United States Code, Section 1343, committed in connection with laundering the proceeds of the No-Fault Scheme alleged herein, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## COUNT FIVE
### (Money Laundering)

The Grand Jury further charges:

25.    The allegations set forth in paragraphs 1 through 14 of this Indictment are repeated and alleged as if fully set forth herein.

26.    From at least in or about January 2021 through at least in or about December 2021, in the Southern District of New York and elsewhere, ALVARO GEOVANNI QUIJADA-LEMUS, a/k/a "Giovanni," the defendant, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, to

wit, alien smuggling committed for the purpose of financial gain, in violation of Title 8, United States Code, Section 1324, would and did conduct and attempt to conduct a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, involving property represented to be the proceeds of specified unlawful activity, to wit, the proceeds of alien smuggling committed for the purpose of financial gain, in violation of Title 8, United States Code, Section 1324.

(Title 18, United States Code, Section 1956(a)(3)(B) and 2.)

## COUNT SIX
### (Operation of an Unlicensed Money Transmitting Business)

The Grand Jury further charges:

27. The allegations set forth in paragraphs 1 through 14 of this Indictment are repeated and alleged as if fully set forth herein.

28. From at least in or about 2019 through at least in or about December 2021, in the Southern District of New York and elsewhere, ALVARO GEOVANNI QUIJADA-LEMUS, a/k/a "Giovanni," the defendant, knowingly conducted, controlled, managed, supervised, directed, and owned all and part of an unlicensed money transmitting business, which affected interstate and foreign commerce and (i) was operated without an appropriate money transmitting license in a State where such operation was punishable as a misdemeanor or a felony under State law; (ii) failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section; and (iii) otherwise involved the transportation and transmission of funds that were known to the defendant to have been derived from a criminal offense and were intended to be used to promote and support unlawful activity, to wit, LEMUS transmitted money into and through the United States, including

into and through the Southern District of New York, by obtaining checks representing proceeds of the No Fault Scheme and cashing those checks in exchange for a fee.

(Title 18, United States Code, Sections 1960 and 2.)

### FORFEITURE ALLEGATIONS

29. As a result of committing offense alleged in Count One of this Indictment, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

30. As a result of committing the offense alleged in Count Two of this Indictment, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," and DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

31. As a result of committing the offense alleged in Count Four of this Indictment, KENAN TARIVERDI, a/k/a "Kenan Tariverdiev," a/k/a "Ken," NAZIM TARIVERDI, a/k/a "Nazim Tariverdiev," DILSHOD ISLAMOV, a/k/a "Dylan," a/k/a "Dilan," and ALVARO GEOVANNI QUIJADA-LEMUS, a/k/a "Giovanni," the defendants, shall forfeit to the United

States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

32. As a result of committing the offenses alleged in Counts Five and Six of this Indictment, ALVARO GEOVANNI QUIJADA-LEMUS, a/k/a "Giovanni," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses.

## Substitute Assets Provision

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;<br>
Title 21, United States Code, Section 853; and<br>
Title 28, United States Code, Section 2461.)

_____           _Damian Williams_____
FOREPERSON                          DAMIAN WILLIAMS
                                    United States Attorney